IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROY M. HOPKINS, #42528-037 *
        Plaintiff,
v. * CIVIL ACTION NO. RDB-10-3721

ROBERT A. KOPPEL *
DR. GREGORY ROSS
        Defendants. *
                    ***

## MEMORANDUM OPINION

I.    PROCEDURAL HISTORY

This 42 U.S.C. § 1983 civil rights Complaint was received for filing on December 21, 2010, when Plaintiff was held at the Maryland Correctional Adjustment Center ("MCAC") as a federal inmate.[1] In his original and court-ordered supplemental Complaint Plaintiff alleges that he was seen by Defendant Ross on October 28, 2010, and informed that it would take three months for him to see the prison podiatrist for his foot pain. Plaintiff complains that Defendants were not responsive to his complaint of foot pain, his medical shoe "pass" to have medical shoes, and his request to "accommodate me with a substitute foot item for the pain." (ECF Nos. 1 & 3). He seeks injunctive relief (medical shoes) and damages.

II.    PENDING MOTIONS

Currently before the Court are Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment. (ECF Nos. 12 & 13). Plaintiff has filed an Opposition response. (ECF No. 16). The undersigned has examined the medical records, declaration, and affidavit submitted by the

---

[1] Plaintiff was convicted and sentenced in this Court and transferred to a U.S. Bureau of Prisons facility. *See United States v. Hopkins*, Criminal No. L-06-311 (D. Md.). He was apparently returned to this district in 2010 for resentencing and was detained in Division of Correction facilities in Baltimore while awaiting resentencing and his return to the U.S. Bureau of Prisons.

parties and finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2010). For reasons to follow, Defendants' pleadings, construed as motions for summary judgment, shall be granted.

III. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369

U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

IV. DISCUSSION

1. Facts

Plaintiff was transferred to the Maryland Reception, Diagnostic and Classification Center ("MRDCC") by the U.S. Marshals on September 10, 2010. During his initial medical evaluation the following day he said nothing about having pain in his feet or needing new orthotics for his shoes. Plaintiff was subsequently transferred to MCAC, where he did not complain about the need for an orthopedic shoe until October 28, 2010. Dr. Ross evaluated Plaintiff on October 29, 2010, and noted that he had been prescribed orthotics to wear in his shoes, but that they were worn out. Ross's examination of Plaintiff revealed that he had fallen arches or "pes planus" in both feet. The physician submitted a request for Plaintiff to be evaluated by a podiatrist to determine his need for new orthotics. (ECF No. 13, Ex. A). Plaintiff was seen by Hanger Prosthetics on November 18, 2010, at which time new orthotics were ordered. The orthotics were shipped to Ross on February 4, 2011, two months after Plaintiff's December 3, 2010 transfer back into federal custody. Ross affirms that the orthotics were shipped to Plaintiff's current place of confinement on March 31, 2011.[2]

---

[2] For his part, MCAC Warden Koppel claims that Plaintiff's Complaint should be dismissed

In his Opposition, Plaintiff acknowledges being temporarily housed at MCAC in 2010, and claims that he has been dealing with the condition for three years.[3] He further states that he sent a sick-call encounter form "for the second time" on October 8, 2010. Plaintiff complains that Ross "did not show any real proof of medical treatment," as evidenced by delays in his receipt of the replacement orthotics and the failure to prescribe him pain medication. He asserts that Ross fails to state when he received the orthotics and when the orthotics were shipped. He acknowledges receiving the orthotics on April 14, 2011, but questions why it took so long to ship the orthotics to him. (ECF No. 16).

2. Legal Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

---

because he was unaware of and played no role in Plaintiff's medical care regarding his foot condition. (ECF No. 12).

[3] Plaintiff attaches a U.S. Bureau of Prisons Health Services encounter form from February and November of 2009, showing that he had been given arch supports and non-steroidal anti-inflammatory drugs for foot pain due to plantar fasciitis (inflammation of foot tissue). ECF No. 16 at Attachments.

4

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer,* 511 U.S. at 839- 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce,* 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter...becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center,* 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer,* 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown* 240 F. 3d at 390; *citing Liebe v. Norton,* 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle,* 429 U.S. at 105-06; *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LeFevere,* 423 F.Supp.2d 1064, 1070-71 (C.D. Cal. 2006).

Lastly, 42 U.S.C. § 1983 liability on the part of supervisory defendants, such as Koppel requires a showing that: "(1) the supervisory defendants failed promptly to provide an inmate with

5

needed medical care, (2) the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984) (supervisory liability for an inmate's beating by prison guards).

Dr. Ross diagnosed Plaintiff with fallen arches, an ailment which in and of itself does not suggest a serious medical condition.[4] Assuming, *arguendo*, that Plaintiff's underlying medical condition is sufficiently serious to support an Eighth Amendment claim, the Court finds no Eighth Amendment violation. Plaintiff has simply failed to come forward with sufficient evidence to support his claim that Dr. Ross was deliberately indifferent. Plaintiff was a federal prisoner temporarily housed at MCAC from September 20, 2010 through December 3, 2010. He does not dispute the fact that when initially evaluated by healthcare staff at MCAC he said nothing about having foot pain or needing new orthotics. The parties claim that such complaints were not made until October of 2010. Dr. Ross examined Plaintiff's feet for his claim about needing an orthopedic shoe. He noted that the orthotics in Plaintiff's shoes, prescribed while in federal custody, were worn out. Ross concluded that Plaintiff had fallen arches in both feet, and requested that he be evaluated by a podiatrist to determine the need for new orthotics. Plaintiff was seen by a prosthetics device company representative and new orthotics were ordered and shipped to Dr. Ross at MCAC two and one-half months later. Plaintiff, however, was by that time housed in the U.S. Bureau of Prisons. The orthotics were shipped to him and received the following month. While there may have been delays in the receipt of the

---

[4] *See Johnson v. Medford*, 208 F.Supp.2d 590, 592 (W.D. N.C. 2002).

orthotic devices, given Plaintiff's limited stay at MCAC and his transfer back to the U.S. Bureau of Prisons, the delays were not constitutionally significant. The Court finds no willful conduct to deny medical care on the part of Dr. Ross or Warden Koppel, the latter of whom had no personal involvement in Plaintiff's medical care and was entitled to rely on the judgment of healthcare staff.

V. CONCLUSION

For the aforementioned reasons, the Court finds no Eighth Amendment violation. Defendants' Motions, construed as motions for summary judgment, shall be granted. A separate Order follows.

Date: April 29, 2011

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE